# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| **RICARDO AGUILA DIAZ,**<br><br>***Petitioner*,**<br><br>**v.**<br><br>**PAMELA BONDI, ATTORNEY GENERAL; KRISTI NOEM, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY; AND MARIA DE ANDRA-YBARRA, U.S. ICE FIELD OFFICE DIRECTOR;**<br><br>***Respondents*.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **No. 3:26-CV-00578-LS** |

## MEMORANDUM OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

This is one of more than 700 habeas corpus petitions filed in this Court in which a petitioner seeks release from immigration custody. In this case, Petitioner challenges detention for more than six months following a final order of removal. The petition is **DENIED**.

**Background**[1]

Petitioner is a citizen and national of Cuba who was ordered removed by an Immigration Judge.[2] The United States seeks to remove Petitioner to an alternate third country because Cuba refused Petitioner's repatriation.[3]

The government arranged Petitioner's removal to Mexico but Petitioner refused to go on January 5, 2026.[4] Mexico then rescinded permission for Petitioner's removal there because of an

---

[1] The parties have not informed the Court that Petitioner has been removed or otherwise released. If either occurred, the Court denies the petition as moot. *See Ortez v. Chandler*, 845 F.2d 573, 575 (5th Cir. 1988) (holding that a habeas petition becomes moot when the habeas relief requested "can no longer be effected").
[2] ECF No. 11-1 at 2.
[3] *Id.*
[4] *Id.* at 3.

ostensible medical condition. Petitioner refuses to cooperate with the government in its efforts to find an alternate third country, claiming he does not know how to use the computer in the law library,[5] even though he has filed three legal pleadings.[6] Petitioner has remained in administrative custody for over six months and now seeks a writ of habeas corpus, arguing that continued detention violates the statutory and constitutional boundaries established in *Zadvydas v. Davis*.[7]

**The Law**

Under 28 U.S.C. § 2241, federal courts have jurisdiction over statutory and constitutional challenges to post-removal-order detention.[8] In *Zadvydas*, the Supreme Court held that post-removal-period detention under 8 U.S.C. § 1231(a)(6) is implicitly limited to a period "reasonably necessary to secure removal."[9] The Court established a six-month presumptive boundary, after which a detainee may seek release by demonstrating "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."[10] If the detainee makes that showing, the burden shifts to the government to produce evidence sufficient to rebut it.[11]

**Analysis**

The *Zadvydas* framework cannot be invoked by a petitioner whose own conduct causes the delay in removal. As an initial matter, neither petitioner in the *Zadvydas* case impeded or sought to impede their respective removals from the United States. Zadvydas was born in Germany to Lithuanian parents, but both Germany and Lithuania refused to accept Zadvydas because he was not a citizen of either country.[12] The Court notes with interest that Zadvydas himself actually

---

[5] *Id.*
[6] See ECF Nos. 13, 14, and 15.
[7] 533 U.S. 678 (2001).
[8] *Id.* at 688 (2001).
[9] *Id.* at 699.
[10] *Id.* at 701.
[11] *Id.*
[12] *Id.* at 684.

applied, and reapplied, for Lithuanian citizenship in an ostensible effort to effect his own removal.[13] The other petitioner in the *Zadvydas* case, Kim Ho Ha, could not be returned to his native Cambodia because the United States had no repatriation treaty with Cambodia in 1999.[14]

Moreover, Congress anticipated and addressed the scenario in which an alien detainee resists removal following the entry of a final removal order. Normally, "when an alien is ordered removed, [the government] shall remove the alien from the United States within a period of 90 days (. . . the 'removal period')."[15] But this statutory removal period is explicitly extended, and detention is authorized to continue, if the alien "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."[16]

The record in this case establishes that Petitioner refuses to cooperate and actively resists removal. Because Petitioner has "act[ed] to prevent . . . removal" within the meaning of §1231(a)(1)(C), the statutory removal period is suspended by operation of law. Accordingly, Petitioner cannot satisfy the threshold burden under *Zadvydas* to demonstrate that there is "no significant likelihood of removal in the reasonably foreseeable future."[17] A detainee who actively obstructs the execution of a final removal order cannot claim the benefit of the *Zadvydas* presumption, because that presumption addresses governmental inability to effectuate removal—not a detainee's self-imposed impediment to it.

---

[13] *Id.*
[14] *Id.* at 686.
[15] 8 U.S.C. § 1231(a)(1)(A).
[16] *Id.* § 1231(a)(1)(C).
[17] *Zadvydas v. Davis*, 533 U.S. at 701.

**Conclusion**

Petitioner was released to go to Mexico in January 2026 but chose to remain in immigration custody. Petitioner's continued detention does not contravene the statutory or constitutional limitations recognized in *Zadvydas v. Davis*. Petitioner is not in custody in violation of the laws or Constitution of the United States. Accordingly, Petitioner has failed to state a cognizable claim for relief under 28 U.S.C. § 2241.

The petition for a writ of habeas corpus [ECF No. 1] is **DENIED**. Any and all pending motions are **DENIED AS MOOT** and the Clerk shall **CLOSE THE CASE**.

**SO ORDERED**.

**SIGNED** and **ENTERED** on November 1, 2026.



**LEON SCHYDLOWER**
**UNITED STATES DISTRICT JUDGE**